767 P.2d 1272

**Esther Resendiz MUNIZ, Plaintiff–Appellant,**

v.

**Jim R. SCHRADER, d/b/a Grindstone Farms, Jim R. Schrader and Robert Hall, Partners, d/b/a Cannon Farms, Leroy Martinez and Gilardo Orosco, Defendants–Respondents.**

No. 17208.

Court of Appeals of Idaho.

Jan. 20, 1989.

Steven J. Pierce, argued, and Steven M. Stoddard, Pierce & Associates, Boise, for plaintiff-appellant.

Robert M. Tyler, Jr., argued, and Kenneth M. Sebby, Elam, Burke & Boyd, Boise, for defendants-respondents Schrader, Martinez, Orosco, and Grindstone Farms.

Bruce R. McAllister, argued, and Jonathan P. Carter, Quane, Smith, Howard & Hull, Boise, for defendants-respondents Schrader, Hall, and Cannon Farms.

PER CURIAM.

This is an appeal from a judgment of the district court upholding the settlement of a claim for damages in a wrongful death action. We affirm.

The judgment followed an evidentiary hearing on a motion by the defendants, seeking to enforce a settlement of the wrongful death claim. At issue was the authority of the decedent's son, Jose Muniz, to enter into the settlement on behalf of Jose's mother, Esther Muniz, a plaintiff in the action. Contrary to the position taken by Mrs. Muniz, the district court found that she had expressly authorized Jose to handle the claim, including settlement in his discretion for any amount he determined—without obtaining prior approval from Mrs. Muniz on the agreed amount. Appealing from the judgment, Mrs. Muniz raises two issues: first, whether the district court's finding of fact, that she had expressly given her son Jose unlimited authority to settle her claim, is supported by the evidence presented to the district court; and second, whether the alleged settlement was ineffective because her attorneys did not have express authority from her to settle the claim and they did not ascertain the limits of Jose's authority to consent to the settlement.

The procedural background of this dispute is shown by certain findings of fact

made by the district court at the completion of the evidentiary hearing. Those findings are unchallenged on this appeal and are as follows. Esther Muniz is a citizen and resident of Mexico. In 1981, her husband, Salvador, and their son, Jose, were migrant farm laborers in Idaho, when Salvador died as a result of an accident on the defendants' farm. Jose retained a law firm, Hicks and Frachiseur, to file suit on Mrs. Muniz' behalf.[1] Mrs. Muniz did not have a telephone and she spoke no English. In order to obtain information from Mrs. Muniz to assist them in prosecuting the suit, the attorneys enlisted the services of Camilo Lopez, a Spanish-speaking attorney. In 1982, Mrs. Muniz, through Mr. Lopez, expressly agreed to accept a settlement of $40,000 after expenses, but such an amount apparently was never offered by the defendants, nor was a settlement for that figure ever effected.

Settlement negotiations continued among counsel for the parties. In November, 1985, counsel arrived at an agreement to compromise and settle the case for $34,500. Of that amount, $4,500 would be paid to a hospital to discharge a lien for expenses incurred by Salvador Muniz before his death. The remainder, $30,000, would be paid to Mrs. Muniz and the firm of Hicks and Frachiseur. Jose agreed to the settlement. He wrote and communicated the terms of the settlement to Mrs. Muniz but received no reply. One of the plaintiffs' attorneys, Francis Hicks, telephoned two of Mrs. Muniz' adult daughters,[2] individually, who were living in California and informed them of the settlement. Neither daughter objected to settling the claim nor to the amount of the settlement. Based upon Jose's consent on behalf of Mrs. Muniz, a settlement agreement was reached among the attorneys on December 2, 1985. To implement the settlement, the defendants

asked that releases be obtained from Mrs. Muniz and her family. In late December, 1985, Mrs. Muniz rejected the settlement as inadequate and retained new counsel.

In addition to the foregoing findings of the court, the record shows that in December, 1986, an amended complaint was filed by Mrs. Muniz' new counsel on her behalf and on behalf of all of her children except Jose; Jose, however, joined in the amended complaint through his attorney, Francis Hicks. In response to the amended complaint, the defendants filed counterclaims seeking specific performance of the 1985 settlement agreement. Later, on motion by the defendants for summary judgment, all of the Muniz children, including Jose, were dismissed from the action on the ground that the children did not qualify as "heirs" under I.C. § 5–311, the Idaho statute governing actions to recover damages for an alleged wrongful death.[3] Mrs. Muniz was left as the sole plaintiff in the action. The defendants then filed a motion to dismiss the amended complaint and to enforce the 1985 settlement agreement. Following an evidentiary hearing on the motion, the court upheld the settlement and this appeal ensued.

Along with the findings of fact regarding the procedural history of the case, outlined above, the court made specific findings with respect to Jose's authority to settle the case in 1985. These latter findings form the gravamen for this appeal. The court found that Mrs. Muniz had expressly authorized Jose to do everything to handle the wrongful death claim against the defendants in this action; that Mrs. Muniz expressly authorized Jose to settle the claim at his discretion; that Mrs. Muniz expressly authorized Jose to settle the entire claim for any amount he thought best without obtaining prior approval from her; that "[a]s the expressly authorized agent"

---

1. The complaint also named, as plaintiffs, Mrs. Muniz' eleven children, including Jose. Seven of the children were minors and Jose was designated as their guardian ad litem, in the caption of the complaint.

2. These daughters were among the children initially named as plaintiffs in the action.

3. The order dismissing all of the Muniz children has not been challenged on appeal.

for Mrs. Muniz, Jose notified Hicks and Frachiseur that he agreed to the settlement of the case on the terms reached by counsel for the parties; and that Mrs. Muniz did not attempt to limit the authority of Jose as to the amount for which he could settle her claim, until after the settlement agreement of December 2, 1985, had been reached. The court also found that Jose was the Muniz family's spokesman in the United States and that Hicks and Frachiseur, the attorneys for Mrs. Muniz at the time of the settlement, understood that Jose had express authority to settle the claim for any amount he thought best without obtaining his mother's prior approval. The court found that Jose retained his full authority to settle the wrongful death claim up to and including the time the settlement agreement was reached. The court found that Jose acted within the scope of his express authority when he communicated his acceptance of the settlement agreement to Hicks and Frachiseur, who then acted within the scope of their express authority in compromising the claims with counsel for the defendants by entering into a binding agreement of settlement.

■ With respect to appellate review of a trial court's factual findings, several principles are well established. Rule 52(a), I.R.C.P., provides that the trial court's findings of fact shall not be set aside unless clearly erroneous. The rule further acknowledges that, in the application of this principle, regard shall be given to the special opportunity of the trial court to judge the credibility of those witnesses who appear personally before it. In this respect, the reviewing court is precluded from substituting its own opinion of a witness's credibility for that of the trier of fact. *Salazar v. Tilley*, 110 Idaho 584, 716 P.2d 1356 (Ct.App.1986). As to the "clearly erroneous" standard under Rule 52(a), clear error will not be deemed to exist if the court's findings are supported by substantial and competent, though conflicting, evidence. *Rasmussen v. Martin*, 104 Idaho 401, 659 P.2d 155 (Ct.App.1983). Where evidence is conflicting, the task of weighing such evidence falls within the province of the trial court. *Id.* Finally, when a trial court's findings of fact are challenged on appeal, the appellant has the burden of showing error, and the reviewing court will review the evidence in a light most favorable to the respondent. *Higginson v. Westergard*, 100 Idaho 687, 604 P.2d 51 (1979); *Salazar v. Tilley, supra.*

We find no explicit challenge in this case to the district court's characterization of Jose as the "agent" of Mrs. Muniz. Indeed all parties seem to accept that fact; no one contends that Jose lacked authority from Mrs. Muniz to file the suit or to pursue the litigation on her behalf. The dispute, instead, is whether Jose also had authority from Mrs. Muniz to effect a settlement of her claim. In this regard, certain principles relating to the law of agency are applicable to this case.

■ Generally, a settlement may be effected by an agent representing a principal to a controversy, so long as the agent has settlement authority. 15A C.J.S. *Compromise & Settlement* § 6 (1967 & 1988 Supp.); 3 AM.JUR.2D, *Agency* § 96 (1986). In Idaho, an agent must have actual authority—either express or implied—to compromise and settle his principal's claim. *See Cameron Sales, Inc. v. Klemish*, 93 Idaho 451, 463 P.2d 287 (1970). Express authority refers to that authority which the principal has explicitly granted the agent to act in the principal's name. *Bailey v. Ness*, 109 Idaho 495, 708 P.2d 900 (1985). The declarations of an alleged agent, standing alone, are insufficient to prove that the principal has conferred such authority. *Clark v. Gneiting*, 95 Idaho 10, 501 P.2d 278 (1972). However, the authority of the agent to act for and on behalf of his principal does not have to be established by direct or positive proof, but may be inferred from dealings, circumstances, acts and conduct. *White v. Doney*, 82 Idaho 217, 221, 351 P.2d 380, 382 (1960). Furthermore, in a case where the evidence is

conflicting, or different reasonable interpretations may be drawn from the evidence, the question of the nature and extent of the authority of an agent is one of fact to be determined by the trier of fact. 3 AM.JUR.2D, *Agency* § 373 (1986). Our Supreme Court followed this approach in *Bevercombe v. Denney & Co.*, 40 Idaho 34, 42, 231 P. 427, 430 (1924), by holding that the authority of an alleged agent to enter into a contract binding on the principal, in view of a conflict in the evidence as to the agent's authority, was a question of fact for resolution by the jury in that case.

With these principles in mind, we turn to the evidence submitted in this case on the question of Jose's authority to settle the wrongful death claim on behalf of his mother. Jose testified that he had talked to his mother about filing the lawsuit on behalf of her and the children. He said that she had given him the power to handle the lawsuit in her behalf and on behalf of all of the children. He understood he was to be the spokesman for the family. He testified that his mother had told him that anything he agreed to was fine, including the power to settle the lawsuit, and that whatever he agreed to in settlement was satisfactory with her. He testified that after he had consented to the settlement he wrote to his mother informing her of the terms of the settlement.[4]

Mrs. Muniz also testified. She admitted that she had told attorney Lopez that Jose had authority or power to settle the case. She confirmed she received a letter from Jose outlining the settlement. She said she did not answer the letter because the amount she was to receive in the settlement was less than the $40,000 she thought she would get.

Mrs. Muniz gave inconsistent testimony on the question of the extent of Jose's authority to settle the lawsuit. On direct examination she testified that she never had told Jose that he could decide how much money to accept to settle the case. She also said she never had told Jose he could settle the case without talking to her first. On cross examination, she admitted that she gave Jose authority to pursue her claim. She conceded that Jose was authorized to effect a settlement on her behalf. She said she changed her mind after Jose had agreed to the settlement and after she had secured a new attorney. She said that until she terminated his authority, Jose was authorized to settle the claim on terms he thought best.

■ Considering the testimony in the light most favorable to the respondents, and deferring to the district court's prerogative to judge the credibility of witnesses and to weigh conflicting evidence, we hold that the district court's findings on the question of Jose's unlimited authority to settle Mrs. Muniz's claim are supported by substantial evidence. Furthermore, because the evidence supports the district court's findings regarding Jose's authority, we conclude also that the attorneys, Hicks and Frachiseur, could settle the case upon Jose's consent alone, without further authority to them from Mrs. Muniz.

The judgment is affirmed. Costs to respondents. No attorney fees on appeal having been requested, none will be awarded.

---

**4.** Jose also testified that his mother wrote back to him, stating the settlement "was fine" and that she agreed to it. The district court, however, specifically found that Mrs. Muniz did not reply to Jose's letter, apparently believing Mrs. Muniz' testimony on that point.